UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DETROIT FREE PRESS, INC.,

        Plaintiff,

                                   Case No. 13-12939

v.

                                   Hon. Patrick J. Duggan

UNITED STATES DEPARTMENT OF
JUSTICE,

        Defendant.

_____/

## OPINION AND ORDER

The present dispute involves Plaintiff Detroit Free Press's ("Free Press")

January 25, 2013 request for booking photographs (colloquially referred to as

"mug shots") of four individuals then under indictment and awaiting trial on

federal drug and public corruption charges in the United States District Court for

the Eastern District of Michigan. The request was made pursuant to the Freedom

of Information Act ("FOIA"), 5 U.S.C. § 552. At the time of the request, the four

individuals – all police officers with the City of Highland Park, Michigan – had

been indicted, their names had been made public, they had appeared in open court,

and they were being actively prosecuted by the United States Attorney's Office.

The United States Marshal Service ("USMS"), a subordinate law enforcement

bureau within Defendant Department of Justice ("DOJ"), denied the request, citing

the FOIA's Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), despite controlling Sixth Circuit precedent holding that the subjects of the booking photographs do not have a privacy interest warranting nondisclosure.

After exhausting administrative remedies, Free Press filed a three-count complaint containing the following causes of action against DOJ: Count I – Violation of the FOIA; Count II – Contempt; and Count III – Declaratory Judgment.  (Am. Compl.)  The parties subsequently filed cross motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 and the motions have been fully briefed.  Having determined that that oral argument would not significantly aid the decisional process, the Court dispensed with oral argument pursuant to Local Rule 7.1(f)(2).  For the reasons stated herein, the Court grants summary judgment in favor of Free Press on Counts I and III but grants summary judgment in DOJ's favor on Count II.

## I.   BACKGROUND

**A.   Legal Framework**

*1.   Statutory*

a.   The Freedom of Information Act ("FOIA")

"The statute known as the FOIA is actually a part of the Administrative Procedure Act (APA).  Section 3 of the APA as enacted in 1946 gave agencies broad discretion concerning the publication of governmental records."  *U.S. Dep't*

2

*of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 754, 109 S.
Ct. 1468, 1472 (1989).  Congress subsequently amended section 3 in furtherance of
a stated intention to promote "'a general philosophy of full agency disclosure[.]'"
*Id.* (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 360, 96 S. Ct. 1592, 1599
(1976) (quoting S. Rep. No. 813, 89th Cong., 1st Sess., 3 (1965))); *John Doe
Agency v. John Doe Corp.*, 493 U.S. 146, 151, 110 S. Ct. 471, 475 (1989)
(describing public access to government documents as "the fundamental principle
. . . that animates the FOIA[]"); *CIA v. Sims*, 471 U.S. 159, 166-67, 105 S. Ct.
1881, 1886 (1985) ("The mandate of the FOIA calls for broad disclosure of
Government records."); *Rose*, 425 U.S. at 361, 96 S. Ct. at 1599 (explaining that
Congress enacted the FOIA to "open agency action to the light of public
scrutiny[]") (quotation omitted).

Despite the principle of transparency animating the FOIA, there are certain
instances in which Congress has deemed disclosure inappropriate.  *Sims*, 471 U.S.
at 166-67, 105 S. Ct. at 1886 ("Congress recognized, however, that public
disclosure is not always in the public interest[.]").  Accordingly, in amending the
FOIA, "Congress exempted nine categories of documents from the FOIA's broad
disclosure requirements."  *Reporters Comm.*, 489 U.S. at 755, 109 S. Ct. at 1472.

These exemptions are delineated in 5 U.S.C. § 552(b).[1] One of those exemptions is

relevant to this case: Exemption 7(C).[2]

Exemption 7(C) exempts from disclosure "records or information compiled

for law enforcement purposes, but only to the extent that the production of such

law enforcement records or information . . . could reasonably be expected to

---

[1] "If an agency improperly withholds any documents," by, for example, invoking an exception that is inapplicable, "[federal] district court[s] ha[ve] jurisdiction to order their production." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755, 109 S. Ct. 1468, 1472 (1989). Contrary to the typical standards of review of agency action set forth in the APA instructing that agency action "must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the [withholding governmental] agency to sustain its action[.]'" *Id.* (quoting 5 U.S.C. § 552(a)(4)(B)).

[2] Although DOJ cited both Exemption 6 and Exemption 7(C) in its initial denial of Free Press's FOIA request, (FOIA Denial, Def.'s Mot. Ex. 20), the former protects "personnel and medical files and similar files" while the latter excludes from disclosure "records or information compiled for law enforcement purposes[.]" 5 U.S.C. § 552(b)(6), (7)(C). There is no indication that the records sought in this action fit the types of documents described in Exemption 6. After the instant action was filed in this Court, however, DOJ's Office of Information Policy ("OIP") affirmed the denial, albeit "on partly modified grounds[.]" (Def.'s Mot. Ex. 23.) In the letter affirming the denial, OIP did not cite Exemption 6 but rather relied exclusively on Exemption 7(C). (*Id.*)

Both exemptions referenced in this footnote protect personal privacy interests, although, "Exemption 7(C) is more protective of privacy than Exemption 6[.]" *U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 496 n.6, 114 S. Ct. 1006, 1013 n.6 (1994) (explaining that these exemptions "differ in the magnitude of the public interest that is required to override the respective privacy interests protected by the exemptions[]").

4

constitute an unwarranted invasion of personal privacy."[3]  5 U.S.C. § 552(b)(7)(C).

DOJ denied the request giving rise to the instant suit on the basis that the

disclosure of the booking photographs "could reasonably be expected to constitute

an unwarranted invasion of personal privacy."  (FOIA Denial, Def.'s Mot. Ex. 20.)

As explained more fully below, however, despite USMS's policy regarding the

disclosure of booking photographs, the United States Court of Appeals for the

Sixth Circuit has explicitly rejected the notion that Exemption 7(C) applies in

circumstances such as those existing in this case.

   b.    The Privacy Act

   The Privacy Act of 1974, codified at 5 U.S.C. § 552a, "delineates duties and

responsibilities for federal agencies that collect, store, and disseminate personal

information about individuals."  *Butler v. U.S. Dep't of Justice*, 368 F. Supp. 2d

776, 782 (E.D. Mich. 2005).  It prohibits federal agencies from disclosing personal

information about individuals that is maintained in systems of records except

pursuant to written authorization from the individual or if the disclosure fits within

one of the statutory exceptions.  Importantly, it is not a violation of the Privacy Act

to disclose documents that must be released under the FOIA.  5 U.S.C. §

---

[3] This exemption recognizes that "[t]he focus of the FOIA is to ensure that
the Government's actions are open for scrutiny, not to reveal private third party
information[] which happens to be in the warehouse of the Government."  *Joseph
W. Diemert, Jr. & Assocs. Co. v. FAA*, 218 F. App'x 479, 482 (6th Cir. 2007)
(unpublished) (citing *Reporters Comm.*, 489 U.S. at 765-66, 109 S. Ct. 1477-78).

5

552a(b)(2).  As will become clear in reading this Opinion and Order, the Privacy

Act is relevant because DOJ argues that if, for example, USMS were to disclose

the booking photographs in one of the two federal circuits that have held that such

photographs are exempted from disclosure pursuant to Exemption 7(C), USMS's

disclosure would be in violation of the Privacy Act.  (Def.'s Br. 6 ("The effect of

the Privacy Act is to bar discretionary release of [] information under the FOIA,

limiting the disclosure of personal information to the public to what is

mandatory.").)

**B.    Factual and Procedural Background**

*1.    The Parties*

Plaintiff Detroit Free Press ("Free Press") is a Michigan corporation that

publishes the Detroit Free Press, a newspaper of general circulation in the State of

Michigan.  Defendant United States Department of Justice ("DOJ") is a cabinet-

level department within the Executive Branch of the United States Government.

The United States Marshal Service ("USMS") is a law enforcement bureau within

the DOJ.  28 U.S.C. § 561(a) ("There is hereby established a United States

Marshals Service as a bureau within the Department of Justice under the authority

and direction of the Attorney General.").

*2.    Sixth Circuit Precedent*

In 1993, Free Press submitted a FOIA request for the booking photographs of eight individuals who were then under indictment and awaiting trial on federal charges.  USMS, citing Exemption 7(C), denied the request.  Subsequently, Free Press filed a lawsuit challenging the nondisclosure.  Upon concluding that the information divulged by dissemination of the photographs did not implicate privacy interests, Judge Anna Diggs Taylor of the Eastern District of Michigan granted the newspaper summary judgment and awarded attorney's fees to Free Press.  *Detroit Free Press v. Dep't of Justice*, No. 93-74692 (E.D. Mich. Apr. 29, 1994) (Taylor, J.) (Order attach. Def.'s Mot. Ex. C).  DOJ appealed and, in a decision accompanied by a vigorous dissent, a panel of the Sixth Circuit affirmed. *Detroit Free Press v. Dep't of Justice*, 73 F.3d 93 (6th Cir. 1996) (hereinafter, "*Free Press I*").  The Sixth Circuit denied DOJ's request for rehearing and rehearing en banc and DOJ declined to seek certiorari in the Supreme Court.

The court began its analysis by setting forth the prerequisites to application of Exemption 7(C):

> To be exempt from disclosure under the privacy provision of § (b)(7)(C), information must first be "compiled for law enforcement purposes."  Second, the release of the information by the federal agency must *reasonably* be expected to constitute an invasion of personal privacy.  Finally, that intrusion into private matters must be deemed "unwarranted" after balancing the need for protection of private information against the benefit to be obtained by disclosure of information concerning the workings of components of our federal government.

7

*Id.* at 96 (emphasis in original).  Citing a *per se* rule within the circuit, the *Free Press I* panel quickly dismissed any notion that the booking photographs sought by the newspaper were not "compiled for law enforcement purposes."  *Id.* (citing *Jones v. FBI*, 41 F.3d 238, 245-46 (adopting rule enunciated in three sister circuits "under which records compiled *by* a law enforcement agency qualify as 'records compiled *for* law enforcement purposes' under FOIA[]") (emphasis in original). Because USMS created the booking photographs after arresting the subjects as a routine part of the process of taking them into federal custody, the eight photographs sought easily satisfied the first requirement.  *See* 28 CFR § 0.111(j) (including the "[r]eceipt, processing and transportation of prisoners held in the custody of a marshal" in a list of USMS activities).

With respect to the second element, the Sixth Circuit concluded that the release of booking photographs "could not reasonably be expected to constitute an invasion of personal privacy[]" "to the extent that the FOIA request . . . concerns ongoing criminal proceedings in which the names of the indicted suspects have already been made public and in which the arrestees have already made court appearances."  *Id.* at 97, 95.

Having determined that the release of the booking photographs at issue did not result in an invasion of any personal privacy interest, the majority opinion did not conduct a balancing analysis as part of its holding.  It did, however, address in

8

dicta the possibility that a "significant public interest in the disclosure of the mug shots of the individuals awaiting trial *could*, nevertheless, justify the release of that information to the public." *Id.* at 97-98 (emphasis in original); *id.* at 98 (noting that the release of booking photographs might, "in limited circumstances[,]" "serve to subject the government to public oversight[]").[4]

Prior to the Sixth Circuit's decision in *Free Press I*, USMS had a policy of not disclosing booking photographs of federal arrestees unless the subject of the photograph was a fugitive and its release would aid in the fugitive's capture. (3/21/1994 USMS Policy Notice, No. 94-006 ¶ I, attach. Def.'s Mot. Ex. A-4 ("As a general rule, post-arrest photographs of prisoners or fugitives are not made available to the news media unless . . . release of the photograph is for the purpose of locating that individual[.]").) After *Free Press I* and in effort to accommodate the court's ruling therein, USMS adopted a bifurcated approach to the disclosure of

---

[4] This is consistent with the Supreme Court's application of a categorical balancing approach in *Reporters Committee*. 489 U.S. at 776-77, 109 S. Ct. at 1483-84 (explaining that "[o]ur cases provide support for the proposition that categorical decisions may be appropriate and individual circumstances disregarded when a case fits into a genus in which the balance characteristically tips in one direction[]" and concluding that such a categorical approach may be undertaken pursuant to Exemption 7(C)). As the Tenth Circuit explained in *World Publishing Company v. United States Department of Justice*, "while we apply a categorical approach as required by *Reporter's Committee*, it is possible to envision a narrow set of circumstances that might justify an as applied approach." 672 F.3d 825, 832 n.1 (10th Cir. 2012) (citations omitted). For instance, "[i]f a request was made on the basis of case-specific 'compelling evidence' of illegal activity, release might be appropriate[.]" *Id.*

9

booking photographs, adjusting its policy for claims arising out of the jurisdiction of the Sixth Circuit.  (*See* 9/20/1997 USMS Policy Notice, No. 94-006B, attach. Def.'s Mot. Ex. A-7.)  With the exception of a one-year period between August 2004 and August 2005, USMS released booking photographs in accordance with *Free Press I*.  The circumstances of this period are described immediately below.

### 3.      *Subsequent Cases within the Sixth Circuit*

In 2004, the Supreme Court decided *National Archives & Records Administration v. Favish*, 541 U.S. 157, 124 S. Ct. 1570 (2004), a case involving death scene photographs of then-President William Clinton's deputy counsel Vincent Foster, Jr.  Investigators concluded that Foster had committed suicide but the plaintiff in the case was skeptical and requested the photographs pursuant to the FOIA.  The Government invoked the FOIA's Exemption 7(C) in denying the request, a decision the Supreme Court ultimately upheld upon finding that the requested photographs implicated privacy interests.

After *Favish*, USMS suspended the Sixth Circuit exception upon guidance from DOJ's Office of Information Policy ("OIP").  (Def.'s Mot. 13 n.3 (citing Bordley Decl. ¶ 15, n.2, Def.'s Mot. Ex. A and *id.* Ex. A-10).)  The new policy expressed an opinion that *Favish*, coupled with "the overwhelming weight of case law broadly interpreting Exemption 7(C)'s privacy protection," undermined *Free Press I* to such an extent that the decision "should no longer be regarded as

10

authoritative even within the Sixth Circuit."  (Pl.'s Br. 11-12 (citing 2004 FOIA

Act Guide 3-4, Pl.'s Mot. Ex. D).)  Subsequent to this policy revision, USMS

denied two separate FOIA requests from within the Sixth Circuit and both

requesters brought enforcement actions in federal district court.

    One request was made by Free Press and the enforcement action was once

again heard by Judge Taylor in the Eastern District of Michigan.  *Detroit Free

Press v. Dep't of Justice*, No. 05-71601 (E.D. Mich. 2005) (hereinafter "*Free Press

II*").  The other request was made in the Northern District of Ohio by the Akron

Beacon Journal.  The other case involved the Akron Beacon Journal and was filed

in the Northern District of Ohio.  *Beacon Journal Publ'g Co. v. Gonzalez*, No. 05-

1396 (N.D. Ohio 2005).  By the time the cases were heard, USMS had restored the

Sixth Circuit exception because OIP rescinded its previous guidance.  (Def.'s Mot.

13 n.3 (citing Bordley Decl. ¶ 15, n.2, Def.'s Mot. Ex. A and *id.* Ex. A-11).)  Thus,

in both cases the requested booking photographs were released prior to the

issuance of any opinions by the respective courts.  Judge Taylor granted summary

judgment in favor of DOJ on the grounds that the request was moot but awarded

Free Press attorney's fees.  (Pl.'s Mot. Ex. B.)  Judge Dowd disagreed that the case

was moot, ruled that the denial violated the FOIA, and awarded the newspaper

attorney's fees.  (Pl.'s Mot. Ex. C.)

### 4.    *Circuit Split and Subsequent USMS Policy Revision*

11

Between USMS's reinstatement the Sixth Circuit exception and the events giving rise to this lawsuit, two federal courts of appeals addressed whether Exemption 7(C) prevents disclosure of federal booking photographs – the precise issue raised in *Free Press I* – and answered that question in the affirmative thereby creating a circuit split on the issue. *See World Publ'g Co. v. U.S. Dep't of Justice*, 672 F.3d 825 (10th Cir. 2012); *Karantsalis v. U.S. Dep't of Justice*, 635 F.3d 497 (11th Cir. 2011) (per curiam), *cert. denied*, 132 S. Ct. 1141 (U.S. Jan. 23, 2012). After these decisions, USMS issued a memorandum "supersed[ing] all prior memoranda regarding USMS policy with respect to the release of USMS booking photographs (mug shots) to the public or media." (12/6/2012 Mem. Def.'s Mot. Ex. A-1.) This memorandum provides:

> Until now, the USMS has employed an exception for FOIA requests originating within the jurisdiction of the U.S. Court of Appeals for the Sixth Circuit. . . .
>
> In light of the weight of legal precedent now supporting the Department of Justice's conclusion that booking photographs generally should not be disclosed under the FOIA, the Department has decided that a uniform policy should be applied. Accordingly, effective immediately, the USMS will not disclose booking photographs under the FOIA, regardless of where the FOIA request originated. . . .

(*Id.* at 2-3.)

**5.**      ***The FOIA Request Giving Rise to the Instant Action*** [5]

On January 25, 2013, Free Press submitted a FOIA request to the Deputy

United States Marshal in the Eastern District of Michigan seeking the booking

photographs of four Highland Park police officers who had made their initial

appearance in a case charging them with bribery and drug conspiracy.  (FOIA

Request, Def.'s Mot. Ex. 19.)  DOJ, acting through the Office of General Counsel

of the USMS, denied this request on January 29, 2013 pursuant to USMS's newly-

promulgated policy.  (FOIA Denial, Def.'s Mot. Ex. 20.)  Specifically, DOJ, citing

Exemptions (b)(6) and (b)(7)(C) of FOIA, explained that the release of the four

requested booking photographs "could reasonably be expected to constitute an

unwarranted invasion of personal privacy[.]"  (*Id.* (citing 5 U.S.C. § 552(b)(7)(C).)

On March 15, 2013, Free Press filed a timely appeal with DOJ's Office of

Information Policy ("OIP"), which DOJ acknowledged receiving on March 25,

2013.  (*See* Def.'s Mot. Exs. 21-22.)  DOJ did not issue a determination on the

appeal within the twenty days provided by statute and Free Press, therefore,

---

[5] The original complaint filed in this action sought the booking photographs of former Detroit Mayor Kwame Kilpatrick, his father Bernard Ferguson, and his friend and contractor Bobby Ferguson.  (7/6/2013 Compl., ECF No. 1.)  Free Press's FOIA request was denied by USMS pursuant to its new policy.  After the complaint was filed, USMS discovered that each of the photographs had been previously released and therefore re-released them.  (Def.'s Br. 14 n.4 (citing Bordley Decl. ¶¶ 35-37, 39-40, Def.'s Mot. Ex. A); Pl.'s Br. 6-7.)  As a result, Free Press amended its complaint to focus on the booking photographs of the Highland Park police officers.

exhausted its administrative remedies.  *See* 5 U.S.C. § 552(a)(6)(A)(ii).  On August

19, 2013, subsequent to the filing of the operative complaint (Free Press's

Amended Complaint), OIP affirmed, albeit "on partly modified grounds," USMS's

denial of Free Press's January 25, 2013 FOIA request.  (Def.'s Mot. Ex. 23.)  In

affirming USMS's initial denial of the request, OIP explained:

> To the extent that responsive records exist, without consent, proof of death, official acknowledgment of an investigation, or an overriding public interest, disclosure of law enforcement records concerning an individual could reasonably be expected to constitute an unwarranted invasion of personal privacy.  Because any records responsive to your client's request would be categorically exempt from disclosure, USMS properly asserted Exemption 7(C) and was not required to conduct a search for the requested records.

(*Id.* (internal citations omitted).)

### 3.   *Legal Proceedings*

Free Press filed its Amended Complaint on August 10, 2013.[6]  (ECF No. 7.)

The Amended Complaint contains three causes of action in connection with DOJ's

rejection of Free Press's FOIA request for the booking photographs of the four

Highland Park police officers: Count I – Violation of the FOIA; Count II –

Contempt; and Count III – Declaratory Judgment.[7]  As relief, Free Press seeks an

order directing USMS to produce the photographs of the subjects listed in its

---

[6] See note 5, *supra*.

[7] At the time the Amended Complaint was filed, only one of the four Highland Park police officers had been sentenced and judgment entered.  Case No. 13-20212-1 (judgment entered July 2, 2013).

14

January 25, 2013 request, an order finding DOJ in contempt of this Court's and the Sixth Circuit's directive in *Free Press I*, and assessing appropriate penalties, a declaratory judgment that *Free Press I* remains in force and that DOJ's 2012 policy is invalid to the extent it is inconsistent with that case, and an award of attorney's fees and costs.  The parties eventually filed cross motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 and it is these motions that are presently before the Court.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 instructs courts to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A court assessing the appropriateness of summary judgment asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co*., 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986)).

Courts evaluate cross motions for summary judgment under the same standard.  *La Quinta Corp. v. Heartland Props., L.L.C.*, 603 F.3d 327, 335 (6th Cir. 2010) (citing *Beck v. City of Cleveland*, 390 F.3d 912, 917 (6th Cir. 2004)).

When faced with cross motions for summary judgment, each motion is examined on its own merits.  *Id.*

## III.   ANALYSIS

### A.   Count I – Violation of FOIA

The issue in the typical FOIA enforcement action is whether the nondisclosing agency has proven that the documents sought are exempt from disclosure under any of the nine exemptions set forth in 5 U.S.C. § 552(b).  As noted elsewhere in this Opinion and Order, unlike the substantial evidence and arbitrary and capricious standards of review typically triggered under the APA, the FOIA (which is part of the APA) places the burden on the withholding agency, here DOJ, "to sustain its action[.]"  *Reporters Comm.*, 489 U.S. at 755, 109 S. Ct. at 1472 (quoting 5 U.S.C. § 552(a)(4)(B)).  It is beyond doubt that *Free Press I*, a published panel decision, remains controlling precedent "unless an inconsistent decision of the United States Supreme Court requires modification of the decision or [the Sixth Circuit] sitting en banc overrules the prior decision."  *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) (citations omitted).  As DOJ acknowledges, this Court, which is squarely situated within the Sixth Circuit, is bound by *Free Press I* as the law of this circuit.  (*See, e.g.*, Def.'s Br. 2.)  It necessarily follows that DOJ is unable to discharge its burden of justifying its

16

nondisclosure of the four booking photographs at issue.  Accordingly, the Court
grants summary judgment in favor of Free Press on Count I.

Because the Court has rendered its decision with respect to Count I on the
basis of *stare decisis*, the Court declines to address the merits of the parties'
arguments regarding whether *Free Press I* was correctly decided.  The Court does,
however, believe that it is necessary to address the issue of issue preclusion, or
collateral estoppel, as it has been extensively briefed.  To the extent that Free Press
contends that principles of *res judicata* preclude DOJ from seeking en banc review
of *Free Press I* in the Sixth Circuit, this Court does not agree.  (Pl.'s Br. 15.)

First, two federal appellate courts interpreting the privacy interest protected
by Exemption 7(C) have reached a conclusion contrary to that reached by the Sixth
Circuit.  *Karantsalis*, 635 F.3d at 499 ("We take note of the opinion in *Detroit
Free Press* [] and respectfully reject its holding."); *World Publ'g Co.*, 672 F.3d at
829 ("[T]his court is not bound by the Sixth Circuit's decision in *Detroit Free
Press*, though it should be carefully considered. []  The two federal courts to
address this issue since *Detroit Free Press* rejected its holding that there is no
privacy interest in USMS booking photos, and held that Exemption 7(C) prevents
disclosure in circumstances similar or identical to this case.") (citing *Karantsalis*,
635 F.3d at 497 and *Times Picayune Publ'g Corp. v. U.S. Dep't of Justice*, 37 F.
Supp. 2d 472, 492 (E.D. La. 1999)); *see also Times Picayune*, 37 F. Supp. 2d at

17

477 (holding that the subject of a USMS booking photograph has a protectable

privacy interest under the FOIA).  Due to the FOIA's liberal venue provision,[8]

DOJ contends that USMS's continued compliance with *Free Press I* creates a risk

that USMS will take action in direct conflict with the law as articulated in both the

Tenth and Eleventh Circuits.[9]  (Def.'s Reply 11 (indicating that such circumstances

would arise where the requester resides in the Sixth Circuit and seeks a booking

photograph taken in either the Tenth or Eleventh Circuit).)  Because "a conflict has

emerged between different circuits," and this conflict gives rise to a Catch-22 (in

---

[8] Title 5 U.S.C. § 552(a)(4)(B) provides that venue and jurisdiction are proper "in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia[.]"

[9] DOJ points out that various media entities, many of which are national conglomerates with local affiliates, have circumvented the USMS policy and the decisions of the Tenth and Eleventh Circuits by employing a "straw man" requester.  (Def.'s Br. 13.)  Reporters Committee for Freedom of the Press filed an *amicus* brief in support of a pending petition for rehearing en banc in *Karantsalis* explaining the conundrum: "The only option for requesters outside the states of the Sixth Circuit then is use of a 'straw man' – a Kentucky, Michigan, Ohio or Tennessee resident willing to request and provide the information to out-of-state journalists and others."  (Amicus Br. of Reporters Comm. for Freedom of the Press at 6, *Karantsalis*, No. 10-10229 (11th Cir. May 2, 2011), Def.'s Br. Ex. A-17.)  Further, as the district court noted in *Karantsalis*, USMS released the booking photographs of Bernard Madoff and Joe Nacchio – whose photographs were not taken within the Sixth Circuit – "pursuant to FOIA requests from within the jurisdiction of the Sixth Circuit."  No. 10-10229, 2009 U.S. Dist. LEXIS 126576, at *7.  The district court also indicated that "[t]he fact that Plaintiff has purportedly filed a new request for the booking photographs of [a federal indictee] from a postal mailbox in the Sixth Circuit is immaterial to this case, which involves a request arising from within the jurisdiction of the Eleventh Circuit."  *Id.* at *7-8 (internal citation omitted).

the event a requester lives in the Sixth Circuit and seeks a photograph from the

Tenth Circuit, for example), "the government should be free to relitigate the

issue[.]"  18 Charles Alan Wright & Arthur R. Miller, *Federal Practice and*

*Procedure* § 4425 (2d ed. 1986) (further explaining that "[t]his argument is most

persuasive when the common defendant has become involved with two conflicting

decisions on the merits, lest one party be able to enjoy different rules in different

circuits[.]").  The Court finds this argument to be DOJ's most persuasive because

in addition to acting in contravention to the rule enunciated in the Tenth and

Eleventh Circuits, USMS would also be in violation of its statutory duties as

described in the Privacy Act.  (Def.'s Br. 41.)

Further, collateral estoppel does not prevent DOJ, the "dissatisfied party[,]"

from "seek[ing to redress what it believes was a] wrongly decided question."

*Rutherford v. Columbia Gas*, 575 F.3d 616, 625 (6th Cir. 2009) (Clay, J.,

concurring in part and dissenting in part).  As DOJ succinctly states:

> The crux of [] Free Press's argument is that the Sixth Circuit's
> decision more than seventeen years ago controls this case and cannot
> be disturbed.  That the Sixth Circuit's decision controls in district
> court as a matter of *stare decisis* is of course true.  That it can never
> be disturbed is equally untrue.

(Def.'s Br. 34.)  Free Press's implicit suggestion that *Free Press I* is somehow

indelible runs counter to the development of law in this country.  Although courts

within the Sixth Circuit have consistently applied *Free Press I* to FOIA requests,

as explained, two other circuits have weighed in on the precise question resolved in

*Free Press I* and have respectfully rejected the Sixth Circuit's holding.

*Karantsalis*, 635 F.3d at 499; *World Publ'g Co.*, 672 F.3d at 829.  These two cases,

decided fairly recently and years after *Free Press II* and *Beacon Publishing*, may

serve as the impetus to reconsideration en banc by the Sixth Circuit.  While

axiomatic that the Sixth Circuit is not bound by the legal interpretations expressed

by co-equal appellate courts elsewhere in this country, this alteration to the legal

landscape, in addition to other events unnecessary to this Court's determination,[10]

may provide the requisite grounds to grant a rehearing en banc should the Sixth

Circuit decide that the issue is sufficiently important to hear anew.  *See* Fed. R.

App. P. 35(b)(1)(B).

Second, DOJ contends that collateral estoppel is inappropriate because *Free

Press I* "remains in anomaly in Sixth Circuit jurisprudence."  (Def.'s Br. 37.)

While the Court need not address the merits of this argument, if true, this provides

further justification for en banc review.  Fed. R. App. P. 35(a)(1) (providing that en

banc review is appropriate if "necessary to secure or maintain uniformity of the

court's decisions[]").

Lastly, DOJ argues that the Supreme Court's decision in *Favish* renders

*Free Press I*'s public interest analysis questionable.  (Def.'s Br. 37.)  This is DOJ's

---

[10] For example, the dramatic technological changes brought about by the rise
of the internet.  (Def.'s Br. 37.)

20

least persuasive argument in support of its position that alterations to the legal landscape militate against strict application of collateral estoppel as the public interest portion of *Free Press I* was dicta and is therefore not binding. The argument is not, however, wholly without merit.

For all of these reasons, the Court finds that DOJ is not collaterally estopped from seeking review of the Sixth Circuit's decision in *Free Press I*.

## B.    Count II – Contempt

In Count II, Free Press asks this Court to hold DOJ in contempt for promulgating USMS's 2012 booking photograph policy in violation of both *Free Press I* and *II*.[11] (Pl.'s Br. 19 ("The DOJ's December 12, 2012 policy itself, signed by [USMS] General Counsel Gerald M. Auerbach [] evidence contempt for those

---

[11] Free Press argues that DOJ's "2012 policy declaration that it no longer needs to respect the law of this Circuit" warrants application of 5 U.S.C. § 552(a)(4)(G).  (Pl.'s Br. 18.)  This provision provides:

> In the event of noncompliance with the order of the court, the district court may punish for contempt the responsible employee[.]

5 U.S.C. § 552(a)(4)(G).  The language of this provision is discretionary and does not appear to expand the Court's inherent power to punish by way of contempt. *Cf. Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 18 n.18, 94 S. Ct. 1028, 1037 n.18 (1974) (noting that a Senate Report discussing the FOIA's contempt provision states, "This is another addition which has been made to avoid any possible misunderstanding as to the courts' powers[]") (citing S. Rep. No. 1219, 88th Cong., 2d Sess., 7 (1964)); *id.* at 20, 94 S. Ct. at 1038 ("With the express vesting of equitable jurisdiction in the district court by § 552(a), there is little to suggest . . . that Congress sought to limit the inherent powers of an equity court.").

rulings.") (citing Pl.'s Mot. Ex. E).)  In support of its argument, Free Press

contends that DOJ has a "repeated history over the years of 'disrespecting' (to

adopt a popular slang term) *Detroit Free Press I*[.]"  (*Id.* at 18.)  Further, DOJ's

purported "intent" to violate these court orders is evidenced by DOJ's filing of a

brief in opposition to a petition for certiorari with the Supreme Court in connection

with the *Karantsalis* case.  (*Id.* at 19 (citing DOJ's Br. in Opp. Pl.'s Mot. Ex. J).)

DOJ, on the other hand, contends that contempt is inappropriate for two

general reasons.  First, DOJ explains that "the legal predicate for contempt is

absent[]" because the orders in *Free Press I* and *II* applied specifically to the

photographs requested in those cases.  (Def.'s Br. 3.)  Second, DOJ argues that its

considered litigation strategy of seeking rehearing en banc in the Sixth Circuit does

not amount to contemptuous conduct.

"The movant in a civil contempt proceeding bears the burden of proving by

clear and convincing evidence that the respondent violated a definite and specific

order of the court requiring him to perform or refrain from performing a particular

act or acts with knowledge of the court's order." [12]  *Liberte Capital Group, LLC v.*

---

[12] In its Motion for Summary Judgment, Free Press intimates that this Court
should hold USMS General Counsel Gerald M. Auerbach in contempt, (Pl.'s Br.
19), however in its conclusion it asks that the Court find "the Marshals Service of
the DOJ in contempt[,]" (*id.* at 26).  In its Reply and Opposition to DOJ's Cross
Motion for Summary Judgment, Free Press "suggests that it is . . . appropriate for
this Court to order the author of the . . . Booking Disclosure Policy, Marshals

*Capwill*, 462 F.3d 543, 550 (6th Cir. 2006) (internal quotation marks omitted).

"[T]he prior order [must] be clear and unambiguous to support a finding of

contempt." *Id.* at 551.

Free Press does not identify a clear and unambiguous order requiring the

release of the booking photographs sought in *this* case. Rather, Free Press

indicates that DOJ's "refusal to obey the law of the Circuit should be treated as

contempt of Judge Taylor's [1994] order, as it was affirmed and made categorical

by the Sixth Circuit in [] *Free Press I*." (Pl.'s Reply 7.) The 1994 order, however,

was limited to the photographs requested in that case. (*See* 1994 Order, Def.'s

Mot. Ex. C ("Defendant is . . . ordered to forthwith make available to plaintiff the

eight booking photographs . . . requested in July 1993.").) Further, while the Sixth

Circuit affirmed Judge Taylor's order to the extent that the requested photographs

comported with the criteria set forth in the Sixth Circuit's opinion, the order was,

of course, limited to the facts and circumstances of that case. The order issued in

*Free Press II* is equally unhelpful to Free Press's position. In that case, DOJ

provided Free Press with the requested photographs after DOJ's OIP rescinded its

guidance stating that *Free Press I* was no longer controlling in the Sixth Circuit.

Because Judge Taylor dismissed *Free Press II* as moot, there was accordingly no

order to produce the photographs. (Pl.'s Mot. Ex. B.) Without a "definite and

---

Service General Counsel [] Auerbach . . . to show cause why he should not be held
in contempt." (Pl.'s Reply 8.)

23

specific order of the court" requiring the production of the photographs at issue in *this* case, there is simply no cause to hold any entity or individual – DOJ, USMS, or Mr. Auerbach – in contempt of court. *Liberte Capital*, 462 F.3d at 550.

Despite seeking to convince this Court that contempt is proper under the circumstances presented, Free Press's "real contention is that the disposition of the four booking photographs at issue here should be controlled by [*Free Press I*], not by the specific disclosure orders in prior cases directed at different records." (Def.'s Br. 44.)  As explained in relation to Count I, Free Press is correct: the Sixth Circuit's decision controls the disposition of this case.  However, it is an entirely proper litigation strategy to seek the reversal of an arguably incorrect panel decision by petitioning for an en banc hearing.  In other words, it is not contempt to try to change the law through appropriate channels.  The precedential effect of *Free Press I* is unquestioned, and while this Court understands Free Press's frustration with what it views as DOJ's obstruction with its rights, enforcement of a party's failure to adhere to principles articulated in prior cases is effectuated by a ruling on the merits, not by way of contempt.[13]

---

[13] The Federal Rules of Civil Procedure expressly contemplate that attorneys may seek to reverse existing case law.  Fed. R. Civ. P. 11(b)(2) ("By presenting to the Court a pleading, written motion, or other paper . . . an attorney . . . certifies that . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]").  In such circumstances, a court considering sanctions under Rule 11 should consider whether the "litigant has researched the

Accordingly, the Court grants summary judgment in favor of DOJ and against Free Press on Count II.

**C.     Count III – Declaratory Judgment**

In Count III, Free Press seeks a declaratory ruling that the 2012 USMS Booking Photograph Policy is invalid insofar as it directs that *Free Press I* shall not be followed for booking photograph requests originating in the districts of the Sixth Circuit.[14]  (Pl.'s Br. 26; *see also* Am. Compl. ¶ 29 ("The DOJ has a continuing obligation, under the holdings of this Court and the Sixth Circuit in *Free Press I*, to comply with FOIA requests for mug shots of defendants in ongoing criminal proceedings, at least as to requests made within the Sixth Circuit.").)  Free Press is concerned that without a declaratory judgment, "DOJ is likely to continue to deny FOIA requests similar to those at issue here."  (Am. Compl. ¶ 30.)   Notably, Free Press did not pray for injunctive relief in its Amended Complaint.  To the extent Free Press seeks a ruling that the 2012 policy

---

issues and found some support for its theories even in minority opinions," and whether the litigant indicates that it is seeking to change the law.  Fed. R. Civ. P. 11 Advisory Comm. Note, 1993 Amend.  While Free Press has not moved for Rule 11 sanctions, the Court finds this discussion illustrative of the point that even though this Court is constrained by *Free Press I*, DOJ may permissibly seek to alter existing law.

[14] Free Press does not specifically indicate whether Count III is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

violates circuit precedent, this has been accomplished in resolving Count I.  The

Court, therefore, grants summary judgment in favor of Free Press on Count III.

**D.      Relief**

*A.      Disclosure of Requested Photographs*

DOJ acknowledges that this Court "is bound by Sixth Circuit precedent with

regard to Count I and paragraph B of [Free Press]'s prayer for relief[,]" (Def.'s Br.

45), which seeks "[a]n order directing the DOJ and the Marshals Service to

produce to the Free Press the mug shots listed in the Request[,]" (Am. Compl. 10).

In its Reply Brief, DOJ asks "that any order requiring the release of the booking

photographs be stayed pending appeal."  (Def.'s Reply 22-23.)  This request came

after Free Press's opportunity to respond.

Federal Rule of Appellate Procedure 8(a) provides that a party seeking to

stay a judgment or order of a district court pending appeal must ordinarily move

first in the district court.  Fed. R. App. P. 8(a)(1)(A).  The Sixth Circuit reviews

four factors when evaluating a stay pending appeal under this rule:

> (1) the likelihood that the party seeking the stay will prevail on the
> merits of the appeal; (2) the likelihood that the moving party will be
> irreparably harmed absent a stay; (3) the prospect that others will be
> harmed if the court grants the stay; and (4) the public interest in
> granting the stay.

*SEIU Local 1 v. Husted*, 698 F.3d 341, 343 (6th Cir. 2012) (quoting *Mich. Coal. of

Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir.

26

1991)).  The moving party has the burden of demonstrating entitlement to a stay.
*Id.* (citing *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573
(6th Cir. 2002)).

    With respect to the first factor, DOJ has presented persuasive arguments in
support of its contention that *Free Press I* should be reconsidered en banc.  Despite
this, en banc hearings and rehearing are "not favored[.]"  Fed. R. App. P. 35(a).
Accordingly, the Court finds that the first factor is neutral.

    The second factor does not fit the circumstances of this case very well.
Because the photographs were taken in the Sixth Circuit and the prosecutions took
place in a district embraced by the Sixth Circuit, DOJ does not face the Catch-22
described elsewhere in this Opinion and Order.  In other words, DOJ does not face
the potential of violating its Privacy Act obligations by releasing the photographs
because Exemption 7(C) does not authorize nondisclosure in the Sixth Circuit.
However, the subjects of the four booking photographs may be irreparably harmed
absent the granting of a stay.  This is particularly true because as of the date of this
Opinion and Order, all four defendants have entered guilty pleas and all but one
has commenced serving his sentence.  Case No. 13-20212 (last guilty plea entered
on March 11, 2014, officially closing the case).  If the Sixth Circuit ultimately
agrees with the Tenth and Eleventh Circuits, the disclosure of the booking
photographs may harm the four subjects thereof.

27

Turning now to the third factor, the Court does not believe that granting the stay would harm others.  This belief is rooted in part in the Court's recognition that *Free Press I* specifically declined to address "whether the release of a mug shot by a government agency would constitute an invasion of privacy in situations involving dismissed charges, acquittals, or completed criminal proceedings."  73 F.3d at 97.  As mentioned, since the institution of this action, all four Highland Park police officers have pleaded guilty and judgment has been entered.  Although Free Press had a right to the photographs pursuant to Sixth Circuit precedent, the public interests it asserts in support of its position that *Free Press I* was correctly decided would not be furthered by the release of the photographs at this time. (Pl.'s Br. 23-24.)

The last factor involves the public's interest in granting a stay, which the Court touched upon above.  While the public has an interest in DOJ adhering to law as articulated by the Sixth Circuit and this undercuts the propriety of granting the stay, the Court does not believe that the public's interest in the photographs at this juncture is very great.

In sum, while the Court does not endorse DOJ's conduct, which, as this Court has stated numerous times herein, was in violation of Sixth Circuit precedent, the Court does not believe that further delay in obtaining the photographs will harm cause any harm to either Free Press or the public.

28

Accordingly, although DOJ must release the requested photographs, the Court grants DOJ's request to stay this order pending appeal.

**B.**     ***Attorney's Fees***

Free Press asks this Court to award attorney's fees and costs for DOJ's FOIA violation.  Instead of arguing why such an award is proper in this case, Free Press relies on Judge Taylor's award of fees in both *Free Press I* (which the Sixth Circuit affirmed) and *Free Press II*, as well as Judge Dowd's decision awarding fees and costs in *Beacon Publishing*.   In the two latter decisions, DOJ *explicitly* acknowledged that the refusal to disclose the requested booking photographs was a violation of the FOIA.

Similar to Free Press's briefs, DOJ's briefs are strikingly silent as to why it believes that the imposition of fees is not merited in this case.  DOJ appears to acknowledge that its course of conduct in invoking Exemption 7(C) is incompatible with the court's holding in *Free Press I*.  It follows that DOJ *implicitly* acknowledges that it violated the FOIA as interpreted in the Sixth Circuit.

The FOIA, as amended by the OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524 (2007), provides a "court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."  5

29

U.S.C. § 552(a)(4)(E)(i).  "[A] complainant has substantially prevailed if the complainant has obtained relief through . . . a judicial order, or an enforceable written agreement or consent decree[.]"  *Id.* at § 552(a)(4)(E)(ii)(I).[15]

Although the OPEN Government Act permits courts to assess fees and costs in a case such as this where the complainant, here Free Press, has obtained a judicial order, the language is not obligatory.  *Id.*  Accordingly, the Court turns to the factors district courts are to consider in determining whether a prevailing FOIA complainant should be awarded attorney's fees.  *Free Press I*, 73 F.3d at 98.  These factors include: "'the benefit to the public deriving from the case; the commercial benefit to the complainant and the nature of its interest in the records; and whether the agency's withholding had a reasonable basis in law.'"  *Id.* (quoting *Am. Commercial Barge Lines Co. v. NLRB*, 758 F.2d 1109, 1111 (6th Cir. 1985)).

The Court does not believe that the newspaper's request of the booking photographs at issue was of benefit to the public.[16]  Contrary to the conclusions of

---

[15] Prior to the OPEN Government Act, the FOIA had a basic fee provision: "The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."  5 U.S.C. § 552 (a)(4)(E) (prior to amendment).

[16] Judge Taylor reached the opposite conclusion in *Free Press I*.  However, this Court is not bound by the decisions of other judges on the bench.  While the Court certainly gives these decisions respectful consideration, the Court does not find Judge Taylor's reasoning persuasive.   Further, although the Sixth Circuit

Judge Taylor in *Free Press I*, the Court does not agree that the booking

photographs of federal arrestees provide "'insight into the criminal justice

administration conducted in this district.'"   *Id.* (quoting district court).  Further, the

Court "cannot discern how disclosure of [the four booking photographs] would

serve the purpose of informing the public about the activities of their government."

*Times Picayune*, 37 F. Supp. at 481 (citing *Reporters Comm.*, 489 U.S. at 774, 109

S. Ct. at 1482 (noting that disclosure may serve to "provide details to include in a

news story, but [this] . . . is not the kind of public interest for which Congress

enacted the FOIA[]")); *see also Karantsalis*, No. 10-10229, 2009 U.S. Dist. LEXIS

126576, at *15 (finding that "the public obtains no discernable interest from

viewing the booking photographs, except perhaps the negligible value of satisfying

voyeuristic curiosities[]"), *aff'd Karantsalis*, 635 F.3d 497.  Nor is the Court

convinced that the disclosure of booking photographs provides "'further impetus to

people who might come forward with evidence in criminal prosecutions.'"   *Free

Press I*, 73 F.3d at 98 (quoting district court).  In addition to finding this suggestion

entirely speculative, the Court is unable to ascertain how or why a booking

photograph achieves this result better than an ordinary photograph.  This factor

favors DOJ.

---

affirmed the lower court's imposition of attorney's fees, it reviewed the award for
an abuse of discretion.

The second factor district courts are to consider is "'the commercial benefit to the complainant and the nature of its interest in the records[.]'"[17] *Id.* (quoting *Am. Commercial Barge Lines*, 758 F.2d at 1111). Although the Court recognizes that Free Press may "reap some commercial benefit from its access to the mug shots[,]" *id.*, the Court does not believe that this factor is particularly weighty given that the Sixth Circuit provided the newspaper with a right to the records in question. This right endows Free Press with a strong interest in the requested photographs. While DOJ's litigation strategy may be the best way to resolve the circuit split and the concomitant risks created by that split, the law in this circuit has been clear since 1996. This factor weighs in favor of Free Press.

Lastly, the Court examines "'whether the agency's withholding had a reasonable basis in law.'" *Id.* (quoting *Am. Commercial Barge Lines*, 758 F.2d at 1111). On this point, the balance could fairly tilt in either direction. On the one hand, Sixth Circuit precedent provides Free Press with a right to the four requested photographs. On the other hand, DOJ's withholding does have a reasonable basis in law, just not the law of the Sixth Circuit.

This Court is cognizant of the fact that in order to change the law, DOJ must appeal to a higher authority, whether that authority is the Supreme Court or the

---

[17] Whether this factor is a proper one in the FOIA context is called into question by the Supreme Court's admonition that the identity of a requesting party has no bearing on the merits of his or her FOIA request. *Reporters Comm.*, 489 U.S. at 771, 109 S. Ct. at 1481.

32

Sixth Circuit sitting en banc. Obviously, review in the Supreme Court is discretionary. Thus, review in the Sixth Circuit may be DOJ's best option. Standing alone, however, that is not enough for this Court to find that this factor weighs in DOJ's favor.

Accordingly, the Court will award attorney's fees and costs to Free Press should it prevail on appeal or in the event that an appeal is not taken, because, in either circumstance, Free Press will have substantially prevailed as that term is used in the FOIA's fee statute. At the time that this decision is affirmed on appeal or after DOJ's time to file a notice of appeal has expired, Free Press should file with this Court and serve upon DOJ a verified statement of any fees and/or costs sought in accordance with Federal Rule of Civil Procedure 54(d)(2). DOJ shall have the right to object to Free Press's request as provided in the applicable statutes and court rules.

## IV.   CONCLUSION AND ORDER

For the reasons stated herein, the Court concludes that DOJ, acting through USMS, violated the FOIA as interpreted by the Sixth Circuit.

Accordingly,

**IT IS ORDERED** that Free Press's Motion for Summary Judgment is **GRANTED** on Counts I and III and **DENIED** on Count II;

**IT IS FURTHER ORDERED** that DOJ's Motion for Summary Judgment is **GRANTED** on Count II and **DENIED** on Counts I and III;

**IT IS FURTHER ORDERED** that DOJ must produce the four booking photographs that were the subject of Free Press's January 25, 2013 FOIA request but that this order is **STAYED PENDING APPEAL**;

**IT IS FURTHER ORDERED** that Free Press is entitled to request attorney's fees and reasonable costs should it prevail on appeal or should an appeal not be taken.

Date:  April 21, 2014

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

**Herschel P. Fink, Esq.**
**Galen Thorp, Esq.**